UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 13-cv-22204-WILLIAMS

LORALI, INC.

           Plaintiff/Counter-defendant,

v.

SMK ASSOCIATES, LLC and
FOREVER DUCKY, LLC

           Defendants/Counter-plaintiffs.

_____/

## COUNTER-PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED COUNTERCLAIM, TO TRANSFER VENUE, AND/OR TO MODIFY THE SCHEDULING ORDER, AND INCORPORATED MEMORANDUM OF LAW

Counter-plaintiffs, SMK ASSOCIATES, LLC (SMK) and FOREVER DUCKY, LLC (FD) pursuant Federal Rule of Civil Procedure 15 and 16, 28 U.S.C. § 1404(a), and Local Rule 7.1, hereby files its Motion for Leave to file an Amended Counterclaim (AC), Transfer Venue, or in the alternative, Motion to Modify The Scheduling Order, Extending the Time to Complete Discovery, and File Pretrial and Dispositive Motions, and as grounds thereof, states as follows:

## PROCEDURAL AND FACTUAL HISTORY

This case arises from contractual disputes between Lorali, Inc. (Lorali) and SMK and FD. Martin Borg is the Managing Member of FD and SMK. (AC, ¶¶ 2, 3). SMK's and FD's offices are located in the State of Illinois. *Id.* SMK and FD are resellers of cigarettes, among other products. (*Id.* ¶ 4). SMK and FD are paid upon the sale of goods. *Id.* A gentleman by the name of Steven Weisenfeld, another broker, introduced SMK and FD to Lorali. Weisenfeld conducted business with Lorali for more than 6 years. Paul Mendoza (Mendoza) owns Lorali. (AC ¶ 1). Lorali sells cigarettes to

customers around the globe.

In May 2011, FD received a purchase order from Lorali.  (AC ¶ 5).  FD invoiced Lorali for the goods. (*Id.*  ¶ 9).  The price of the goods were $803,250.  (*Id., see also,* Exhibit A, AC).  FD alleges that Lorali did not pay for the goods, or arrange for delivery or pick-up.  (*Id.* ¶ 10).   FD further alleges it lost substantial profits as a result.

After non-payment of the goods, Lorali sought to continue to do business with Borg's company.  (AC ¶ 14).  Borg again explained to Mendoza that the procedure for purchasing cigarettes through FD and/or SMK worked as follows: A purchase order is submitted; FD and SMK issues an invoice; the invoice is paid to an escrow agent within the requested time frame; an inspection, if requested, may occur.  (AC ¶ 13).

Fully knowing the terms SMK and/or FD established, Lorali submitted additional purchase orders for cigarettes to SMK in February 2012.  (AC ¶ 14). SMK and FD often require clients to sign such agreements because the clients could simply go around the broker and purchase the goods directly from the supplier.  In such a case, FD and SMK would lose substantial profits.  On February 27, 2012, Lorali and SMK entered into a Non-Circumvention Agreement.  (AC ¶ 19; Exhibit E).  The Agreement provided that,

> "the parties agree not to circumvent, disclose, or in any manner enter into any separate business transaction, with individuals, corporations, or other entities, related to information or introduction from or by the other party, or parties hereto, or any associate of such party of Parties."

(AC, Exhibit E, ¶ 4).

On April 9, 2012, Borg traveled to Florida to meet with Lorali to resolve the non-payment of goods it ordered.  [ECF No. 13, ¶ 20; ECF No. 14, ¶ 20].  On April 10, 2012, Borg advised Lorali that his supplier informed him that it had goods available for purchase in Ft. Lauderdale at the Universal Warehouse.  Borg, Weisenfeld, Mendoza,

and a gentleman by the name of Robert Taylor, an agent of Mendoza, traveled to the Universal Warehouse at Port Everglades to inspect the goods SMK believed Sutherland made available for sale.  (ECF No. 14, ¶ 21; AC ¶ 30).  James Batalini (Batalini) is the owner of Universal Warehouse. (Batalini depo. p. 9, lines 15-24, attached to this motion as Exhibit A).   Just before Borg, Mendoza, and Taylor reached the Universal Warehouse, Sutherland telephoned Borg to tell him that the inspection was cancelled because the proper arrangements were not made with Batalini.  (AC ¶ 32).

In May 2012, Lorali requested to purchase cigarettes from SMK.  (AC ¶ 39).  SMK invoiced it for the goods.  (AC ¶ 45 ; Exhibits G, H, I, and J).  Lorali did not pay the invoices.  (AC ¶ 46).  Lorali has also failed to satisfy its account.  (AC ¶¶ 47, 48).  Although it was Lorali that breached the contract by failing to pay for the goods, on April 30, 2013, Lorali sued SMK and FD in Florida.  [ECF No. 1].  The case was removed the Southern District of Florida. *Id*.

On January 22, 2014, the Court permitted Defendants' local counsel, Greenspoon Marder, to withdraw from the action.  [ECF No. 45].  The Court further provided SMK and FD 30 days to identify local counsel.  *Id*.  On February 13, 2014, the Court permitted Defendants' counsel, Ashman and Stein, to withdraw from the action.  [ECF No. 48].  The Court further ordered SMK and FD to obtain counsel within 30 days.  *Id*.  On February 19, 2014, undersigned counsel appeared in this action.  [ECF No. 49].  When Undersigned Counsel appeared in the action, the scheduling order provided that all discovery shall be completed by March 13, 2014.  [ECF No. 43].  At the time undersigned counsel appeared, neither party had propounded any written discovery, or conducted any depositions.   On February 21, 2014, SMK and FD propounded

interrogatories and production upon Lorali. SMK and FD also noticed Lorali for deposition.

On March 11, 2014, this Court kindly granted SMK and FD leave to file a counterclaim, and extended the time to complete discovery by May 13, 2014. [ECF No. 59]. The court further granted Lorali a protective order, as to the deposition of Paul Mendoza, and ordered it be rescheduled at a date mutually agreeable to the parties. [ECF No. 59. p. 4, no. 4]. On March 11, 2012 SMK and FD filed a counterclaim against Lorali. [ECF No. 60].

On May 1, 2014, SMK and FD conducted the deposition of Batalini. SMK and FD discovered for the first time during the deposition that Lorali breached the Non-Circumvention Agreement it entered into with SMK. Batalini testified during his deposition that Taylor came to his office after Borg, Mendoza, and Taylor were denied access to Universal to discuss the goods SMK attempted to sell to Lorali. (Batalini depo. pp. 16-17).[1] During that meeting, Taylor met Walter Vandersypt, a client of Batalini. (*Id.* pp. 18, lines 18-21; p. 20, lines 4-11). Taylor then placed a telephone call to Mendoza, who got on the phone with Vandersypt. Vandersypt's business is selling cigarettes. (*Id.* p. 22, lines 5-7).

On April 27, 2012, only seventeen (17) days after the parties were on their way to the Universal Warehouse to inspect the goods, and Taylor went to the Universal Warehouse to speak with Batalini, Batalini and a gentleman by the name of Walter Vandersypt, formed V & B Trading, LLC (V & B). (See, V & B Trading, LLC Articles of Organization, attached as Exhibit B). Through SMK's introduction and relationships,

---

[1] On April 10, 2012, Borg and Mendoza were not denied access. Instead, the inspection was called off by Sutherland. (AC ¶ 32).

Lorali commenced purchasing cigarettes directly from V & B and Vandersypt.  (Batalini depo., p. 20, lines 16-22; p. 24, lines 6-7).  Since SMK's introduction, Lorali and his affiliated companies have purchased cigarettes from the very same persons SMK introduced them to, in violation of the Non-Circumvention Agreement.[2]  *Id.*  Because SMK discovered for the very first time that Lorali breached the Non-Circumvention Agreement at the deposition of Batalini on May 1, 2014, SMK seeks to amend its complaint to include a cause of action against Lorali for breach of the Non-Circumvention Agreement.   In light of the forum selection clause in the Non-Circumvention Agreement, SMK and FD also seek to change the venue of this action.

## ARGUMENT

### Leave to Amend Should Be Granted To Add A Claim

Rule 15(a) (2) of the Federal Rules of Civil Procedure provides that "[t]he court should freely give leave [to amend pleadings] when justice so requires." The Supreme Court has stated "this mandate is to be heeded." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). The Supreme Court further stated:

> In the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.-the leave sought should, as the rules require, be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

---

[2] Paul Mendoza also confirmed these facts during his deposition held on May 5, 2014. Undersigned counsel has not received the transcript to date.

*Id.*

In determining whether to grant leave to amend a pleading, it is appropriate for a court to consider judicial economy and most expeditious way to dispose of merits of the litigation. *Dussoy v. Gulf Coast Investment Corp.*, 660 F. 2d 594 (5th Cir. 1981). SMK and FD recognize that District Courts are required to enter a scheduling order that limits the time to join other parties, and to amend the pleadings. *Fed.R.Civ.P.* 16(b). When a party's motion to amend is filed after the scheduling order's deadline for such motions, the party must show good cause for why leave to amend should be granted under Rule 15. *Sosa v. Airprint Systems, Inc.,* 133 F.3d 1417, 1419 (11th Cir.1998). A district court may deny a motion to amend on "numerous grounds, such as undue delay, undue prejudice to the defendants, and futility of the amendment." *Maynard v. Bd. of Regents of the Div. of Univs. of the Fla. Dep't of Educ.,* 342 F.3d 1281, 1287 (11th Cir.2003).

Here, the scheduling order provided the parties had until thirty (30) days from the date the court rules on Defendants' Motion to Dismiss to amend their pleadings. [ECF No. 30]. The court denied Defendants' motion to dismiss on December 19, 2013. [ECF No. 42]. Due to the various motions to withdraw by Defendants' counsel, SMK and FD were unable to file their Counterclaim by the scheduling deadline. This Court allowed SMK and FD leave to file a Counterclaim on March 11, 2014. [ECF No. 59]. The Court further extended the time to take discovery until May 13, 2014. *Id.* On March 12, 2014, SMK and FD filed its Counterclaim. [ECF No. 60].

SMK and FD respectfully petition the Court for leave to file an Amended Counterclaim to incorporate additional facts to support a new claim rather than an existing claim. SMK and FD were unaware until its undersigned attorney conducted the

6

deposition(s) of Batalini on May 1, 2014 and Paul Mendoza on May 5, 2014 that Lorali violated its Non-Circumvention Agreement with SMK.   SMK and FD could not have discovered these facts prior to the taking of Batalini's or Mendoza's deposition(s). Although this obvious breach of the Non-Circumvention Agreement is not derived from the very same conduct, transaction, or occurrence as the breach(es) of contract at issue in this action, it indeed arose from a series of related facts.   For example, the breach of the Non-Circumvention Agreement resulted from Lorali's failure to pay SMK and FD for the goods it ordered.   Due to Lorali's failure to comply with the terms of the contract, and satisfy its account, Borg traveled to Florida to meet personally with Mendoza. Through Borg's contact(s), Lorali met Batalini and Vandersypt, who also sold cigarettes. Lorali then commenced purchasing cigarettes from V & B, Vandersypt, and/or Batalini. Mendoza testified during has deposition that Lorali has purchased more than five hundred thousand dollars ($500,000) in cigarettes from Batalini and Vandersypt since said introduction by SMK and Borg.   SMK and FD believe it could be much more.

SMK and FD ask this Court to allow it to amend its Counterclaim to include a cause of action for Breach of the Non-Circumvention Agreement by Lorali.   This will promote the interests of judicial economy and convenience of the parties, and avoid the introduction of duplicative evidence at trial.   For example, in its Corrected Counterclaim, Lorali alleges that SMK and FD traveled to Florida to meet with Lorali.   [ECF No. 13, ¶ 20].   Lorali further asserts "during the meeting, Defendants promised that the cigarettes could be seen and inspected at the Port Everglades warehouse on April 10, 2012." *Id.* And that, on April 10, 2012, Lorali and SMK traveled to the Universal Warehouse on April 10, 2012.   [ECF No. 13, ¶ 21].   These set of facts are relevant to Lorali's causes of

action for breach of contract and fraud, as well as SMK and FD's causes of action for breach of contract against Lorali.  The facts are further relevant to SMK and FD's new claim for Breach of the Non-Circumvention Agreement.  Because the facts identified above will be pertinent to Lorali's current claims before this Court, and SMK's and FD's new proposed claim, SMK and FD submit it would be appropriate to litigate these issues in the same lawsuit.  Otherwise, two different juries will hear identical evidence, which could produce inconsistent findings and results.  The introduction of this evidence in the same lawsuit will avoid the risk of inconsistent findings and results.  In addition, in the event SMK and FD prevail on this new claim, it will also provide an additional set-off of the damages Lorali demands from FD and SMK.

SMK and FD maintain that Lorali will be unable to demonstrate any reason for the denial of the requested amendment.  In other words, SMK and FD meet the requirements of Rule 15(a).

First, SMK and FD did not *undue delay* the filing of the Breach of Non-Circumvention Agreement.  SMK and FD did not know Lorali was conducting business with Batalini and Vandersypt until its lawyer conducted the depositions of Batalini and Mendoza, on May 1, 2014, and May 5, 2014, respectively.  These facts were not available to SMK and FD at the time its Counterclaim was filed.  SMK and FD come before this court asking for leave to amend only a few days after the completion of Batalini's and Mendoza's depositions.  (See, Batalini deposition).  SMK's and FD's request to amend its Counterclaim only a few days after the completion of these depositions further establishes its *good faith*.

Second, the filing of the proposed Amendment will not unduly prejudice Lorali.

To date, Lorali has yet to take a single deposition in this action.  As to the deposition of Batalini, Lorali's attorney has a relationship with Batalini.  In fact, Rhonda Anderson, Esquire, Lorali's record counsel, made Batalini available for deposition without the issuance of a subpoena.  In addition, Anderson spoke with Batalini in order to prepare him for the undersigned's questioning.  (Batalini depo., pp. 5-8).  As such, in order to prepare for trial, Anderson can simply question Batalini without a court reporter's presence, and not suffer any prejudice.

Third, the requested amendment is *not futile,* and SMK and FD have not repeatedly failed to cure deficiencies to the cause of action.  The Non-Circumvention Agreement between Lorali and SMK is a fully executed document.  (AC, Exhibit E).  Mendoza did not deny the existence of such an agreement during his deposition.  Indeed, Mendoza admitted such a document was a valid agreement between the parties.   Until this date, SMK and FD have not alleged a breach of the Non-Circumvention Agreement because it did not have any record evidence to support such a claim other than pure speculation.  As such, the proposed amended new claim is not futile, and SMK and FD have not failed to cure any deficiencies to the claim.

Based upon the foregoing, SMK and FD submit good cause has been demonstrated under Rule 15 for the granting of this motion.  A copy of the Amended Counterclaim is attached to this motion as required by Federal Rules of Civil Procedure.

## Venue Should Be Transferred To The Northern District Of Illinois

In the event this Court allows SMK and FD leave to amend its Counterclaim, SMK and FD request that the Court transfer venue of this action to the Northern District of Illinois.  28 U.S.C.A. § 1404 provides,

(a)   For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

(b)   Upon motion, consent or stipulation of all parties, any action, suit or proceeding of a civil nature or any motion or hearing thereof, may be transferred, in the discretion of the court, from the division in which pending to any other division in the same district. Transfer of proceedings in rem brought by or on behalf of the United States may be transferred under this section without the consent of the United States where all other parties request transfer.

(c)   A district court may order any civil action to be tried at any place within the division in which it is pending…

"Enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 33, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988). For that reason, forum selection clauses in contracts are enforceable in federal courts, and should be considered in the context of a section 1404(a) analysis. *P & S Bus. Machines, Inc. v. Canon USA, Inc.,* 331 F.3d 804, 807 (11th Cir.2003). "The burden is on the party opposing the enforcement of the forum selection clause to show that the contractual forum is sufficiently inconvenient to justify retention of the dispute." *P & S Bus. Machines, Inc.,* 331 F.3d at 807 (11th Cir.2003).

Where a forum selection clause exists, the court must first assess whether the clause is mandatory or permissive. *Slater v. Energy Servs. Group Int'l Inc.,* 634 F.3d 1326, 1330 (11th Cir.2011). "A permissive clause authorizes jurisdiction in a designated forum but does not prohibit litigation elsewhere. A mandatory clause, in contrast, 'dictates an exclusive forum for litigation under the contract.' " *Global Satellite Commc'n Co. v. Starmill U.K. Ltd.,* 378 F.3d 1269, 1272 (11th Cir.2004). "Mandatory clauses

contrast with and are given more weight than permissive clauses, such as those in which one agrees to 'submit' to jurisdiction in a certain venue." *Mulligan v. Frank Found. Child Assistance Int'l,* 584 F.Supp.2d 1328, 1330 (M.D.Fla.2008). A distinctive characteristic of a mandatory selection clause is the use of the term "shall," which prescribes a requirement. *Cornett v. Carrithers,* 2012 WL 687011, *2 (11th Cir. Mar. 2, 2012).

"Forum-selection clauses are presumptively valid and enforceable" absent a "strong showing that enforcement would be unfair or unreasonable under the circumstances." *Krenkel v. Kerzner Int'l Hotels Ltd.,* 579 F.3d 1279, 1281 (11th Cir.2009) Under Eleventh Circuit precedent, a forum selection clause can "be invalidated when: (1) its formation was induced by fraud or overreaching; (2) the plaintiff would be deprived of its day in court because of inconvenience or unfairness; (3) the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene public policy." *Id.*   Such was not the case here.

Although the District Court has discretion to transfer this action, under Eleventh Circuit precedent, the threshold is quite high when a mandatory forum selection clause exists.  *P & S Business Machines., Inc.*, 331 F. 3d at 808 (noting that "[t]he type of ... situation in which judicial enforcement of a contractual choice of forum clause would be improper" is "exceptional").  In the context of the Court's analysis under section 1404(a), a mandatory forum selection clause is a significant factor that figures centrally in the District Court's conclusion.  *Id.* at 807.  Quoting *P & S Business Machines, Inc.*, "while other factors might 'conceivably' militate against a transfer ... the venue mandated by a choice of forum clause rarely will be outweighed by other 1404(a) factors." *P & S Bus.*

*Machines, Inc.,* 331 F.3d at 807.  This means that "the financial difficulty ... a party might have in litigating in the selected forum" can never be a sufficient ground for "refusing to enforce a valid forum selection clause." *Id.* at 807.

Above, SMK respectfully requested that the Court allow it leave to file an Amended Counterclaim to include a cause of action for Breach of the Non-Circumvention Agreement.   (AC, Exhibit E).   The Non-Circumvention Agreement provides,

> This Agreement shall in all respect be interpreted, governed by, and construed in accordance with the laws of the State of Illinois, USA, and the undersigned hereby agrees that in any dispute arising under the contract in which the suit is filed; the venue for that suit shall be the County of Cook, State of Illinois.

(AC, Exhibit E, p. 2).

The existence and enforceability of this Non-Circumvention Agreement is uncontroverted by Lorali.  Mendoza acknowledged during this deposition that he freely entered into the Non-Circumvention Agreement.  It was not entered into as a result of fraud, duress, or other misconduct.  Because the parties have agreed that any dispute arising under the Non-Circumvention Agreement is to be held in Cook County, Illinois, where the Northern District of Illinois sits (Exhibit E, AC), SMK and FD submit this Court should transfer venue of this action to the Northern District of Illinois.

The facts and circumstances surrounding SMK's and FD's request to transfer venue is substantially similar to the request made by Defendants in *P & S Business Machines*, supra.  P & S Business Machines (P & S) was an Alabama corporation, operating in Alabama.  Canon USA was a New York Corporation, and Canon Computer was a California Corporation.  The parties had a dispute about a contract.  The contract

between the parties provided any dispute between the parties would take place in the State of California. P & S filed suit against Canon in an Alabama State Court.  As in this case, Canon removed the action to federal court based upon diversity jurisdiction. Canon subsequently filed a motion to transfer the action to the Central District of California pursuant to the forum selection clause.

The Eleventh Circuit Court of Appeals in *P & S Business Machines* held,

> "it is readily apparent the district court should have transferred the case to California pursuant to an admittedly valid forum selection clause in the contract. There is no evidence that the contract at issue was not freely and fairly negotiated by experienced business professionals, nor has the plaintiff claimed that Canon engaged in fraud, duress, misrepresentation, or other misconduct in connection with the agreement. The considerations concerning the plaintiff's financial ability and the contrasting congestion in the two courts, even if established by a better record than the one in the district court, would not be reasons for failure to enforce the contract in this case under the established law."

*Id.* at 808.

Accordingly, for the above reasons, SMK and FD submit this Court should transfer venue of this action to the Northern District of Illinois, as the Court did in *P & S Business Machines*, provided the Court permits FD and SMK to amend its Counterclaim.

## Motion to Extend Time To Take Discovery On Limited Issue

In the event this Court permits the amendment, but does not transfer venue out of this District, SMK and FD respectfully request that the Court modify the scheduling order to extend the time to take discovery relating to one particular issue, and to modify the period of time to file pretrial and dispositive motions.  The Court's amended scheduling order provides discovery is to be completed by May 13, 2014.  [ECF No. 59, ¶ 2(d)].

Federal Rule of Civil Procedure 16(b)(3)(A) states that a district court must issue a scheduling order that sets a limit on the amount of time to complete discovery. The schedule set forth by the court may only be modified for good cause and with the court's consent. Fed.R.Civ.P. 16(b)(4). To establish good cause, the party seeking the extension must establish that the schedule could not be met despite the party's diligence. *See Oravec v. Sunny Isles Luxury Ventures, L.C.,* 527 F.3d 1218, 1232 (11th Cir.2008).

SMK and FD require additional time to obtain information and documents as to price Lorali (and/or its affiliates) paid for the goods it purchased directly from V & B, Batalini, and/or Vandersypt (and/or its affiliates). SMK and FD could not have obtained this information during the deadline despite its due diligence. Undersigned counsel immediately propounded discovery (Exhibits C & D) and noticed depositions in this action upon his appearance. This Court even cancelled Lorali's deposition scheduled for March 11, 2014, to be rescheduled on a mutually convenient date and time. [ECF No. 59, ¶ 4].

During the deposition of Batalini on May 1, 2014, SMK and FD first obtained record evidence that Lorali breached the Non-Circumvention Agreement. (Batalini depo., pp. 16-22). These facts were confirmed during Mendoza's deposition held on May 5, 2014. SMK and FD could not have discovered Lorali breached the Non-Circumvention Agreement until it was admitted by the deponents during the depositions.

The additional discovery SMK and FD seek to obtain concerns the amount of money Lorali and/or its affiliate companies paid Batalini, Vandersypt, and/or V &B for the cigarettes. These figures will be pertinent to the measure of damages SMK and FD

suffered as a result of the Breach of the Non-Circumvention Agreement.   During Batalini's deposition, he was unsure as to the amount Lorali purchased from V & B. Likewise, Mendoza was uncertain as to the amount Lorali purchased from these persons, although he stated he believed it was around $500,000.

Accordingly, SMK and FD ask the court to modify the scheduling order for a period of sixty (60) days to allow it to obtain facts necessary to prove its claim, and the damages it suffered.

For these reasons, good cause is established to modify the scheduling order to allow SMK and FD to take additional discovery concerning the issue relating to the price and amount of cigarettes Lorali and/or its affiliates purchased directly from V & B, Batalini, and/or Vandersypt, and/or their related companies, for a period of sixty (60) days, as well as to file pretrial and dispositive motions.

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1, counsel for SMK and FD conferred in good faith with counsel for Plaintiff, Rhonda Anderson, Esquire regarding the requested relief.   Lorali does not agree to the proposed relief requested in this motion.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of SMK, LLC's and Forever Ducky LLC's motion for leave to file an Amended Counterclaim, Transfer Venue, and/or in the alternative, extend the time to take discovery on the issue relating to the new claim, and to file pretrial and dispositive motions, has been furnished via the CM/ECF System this 9th day of May, 2014.

**SOLNICK LAW, P.A.**
1815 Griffin Road
Suite 207
Ft. Lauderdale, FL 33004
Phone: 954-321-0176
Fax: 954-321-0177

/s/ *Peter J. Solnick, Esq.*
By: _____
Peter J. Solnick, Esq/FBN 670006

.