UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 13-cv-22204-WILLIAMS

LORALI, INC.

       Plaintiff/Counter-defendant,

v.

SMK ASSOCIATES, LLC and
FOREVER DUCKY, LLC

       Defendants/Counter-plaintiffs.

_____/

## **DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendants, SMK Associates, LLC (SMK) and Forever Ducky, LLC (FD), through undersigned counsel, pursuant to Fed.R.Civ. P. 56 and Local Rule 56.1, hereby file its reply brief in support of its motion for summary judgment [D.E. 103].

**A.**    **Lorali's statement of disputed facts violates Local Rule 56.1, and should not be considered.**

Local Rule 56.1 provides, "a motion for summary judgment and opposition thereto shall be accompanied by a statement of disputed facts as to which it is contended that there does not exist a genuine issue to be tried…." Local Rule 56.1 further provides a party *shall* file a statement of disputed facts no greater than ten (10) pages in length. Local Rule 56.1(a).

In violation of Local Rule 56.1, Plaintiff filed a 15-page statement of disputed facts, without leave of this court. [D.E. 119]. This was a blatant error committed by Plaintiff. Counsel for Plaintiff has been a member of the Florida Bar since October 1987. She has extensive federal court experience, and is acutely familiar with the federal and local rules. As such, Plaintiff's counsel is well aware a statement of disputed facts shall not exceed ten (10) pages in length. Because the statement of disputed facts exceeds the allotted amount by five (5) pages, the court should disregard Plaintiff's statement of facts in deciding summary judgment,

1

and/or disregard the pages that do not comply with the local rules. *Raiford v. National Hills Exchange, LLC.*, 2013 WL 1286204 (S.D. Ga. 2013); *Bagwell v. Peachtree Doors and Windows, Inc.*, 2011 WL 1497831 (N.D. Ga. 2011). Alternatively, the deliberate violation justifies granting Plaintiff's summary judgment motion, especially since this is not the first occasion Plaintiff has deliberately violated the local rules. See, [D.E. 117, pp. 3-5].

There is a second ground upon which Plaintiff's statement of disputed facts should be disregarded by this court. Local Rule 56.1 further provides "statements of material facts submitted in opposition to a motion for summary judgment shall correspond with the order and with the paragraph numbering scheme used by the movant…." "Additional facts which the party opposing summary judgment contends are material shall be numbered and placed at the end of the opposing party's statement of material facts." *Id*.

When filing its statement of disputed facts, it is apparent Plaintiff did not comply with this rule. For instance, Plaintiff *combined* paragraphs 1 and 2; 3, 4, 7, 8, and 9; 5, 6, and 10; 13 and 14; 13, 14, and 15; 17, 19, 22, 23, 29, 30, and 31; and 22, 23, 25, 26, and 28. Plaintiff's paragraphs also did not correspond with the order, and with the paragraph numbering scheme used by the movant. Plaintiff indeed opposed paragraphs 13, 14, and 22 twice, and placed paragraphs 22, 23, 25, 26, and 28 after paragraphs 23, 23, 29, 30, 31, and 32.

Furthermore, within these paragraphs, Plaintiff has asserted additional facts, which should have been placed at the end of the document. It was not. Plaintiff's style of drafting has made it more difficult for SMK and FD to prepare a reply to Plaintiff's response in opposition to the motion for summary judgment. Because the style utilized by Plaintiff does not comply with the Local Rules, its statement of disputed facts should be disregarded by the court.

Plaintiff's statement of disputed facts was due July 1, 2014. Plaintiff's counsel is an experienced lawyer, with years' experience. The deliberate non-compliance with the Local

Rules cannot go unnoticed or excused. Given the time has expired for Plaintiff to file an opposition to SMK and FD's motion for summary judgment, Plaintiff should not be offered an opportunity to amend its statement of disputed facts to comply with the local rules. For the above reasons, Plaintiff's statement of disputed facts should be disregard in whole, or in part, and SMK and FD'S motion for summary judgment should be granted in its entirety.

      B.      **Breach of Contract – Loral v. SMK.**

Plaintiff argues its breach of contract claims survive summary judgment based upon three (3) separate grounds. First, Plaintiff argues the written contract did not require payment to be made in full before inspection. [D.E. 118, p. 3]. Plaintiff's statement is unsupported by the record evidence. On August 9, 2011, FD invoiced Plaintiff for the goods ordered in purchase order No. 17. [D.E. 100, ¶ 4]. The invoice outlined the material terms on the agreement. [D.E. 100-2, ¶ 10; Exh B]. Martin Borg also sent Mendoza an email confirming the contract terms. [D.E. 100-2, ¶ 14; Exh C]. The terms, as provided in the invoice and explained by Borg, stated, "total due upon receipt." Paul Mendoza testified in his deposition that Plaintiff accepted the terms FD and SMK sent to Plaintiff. Mendoza stated, "I accepted that according to what he sent…". [D.E. 100, ¶ 5; D.E. 100-1, pp 84-85]. Plaintiff repudiated the contract when it failed to make payment upon receipt of the invoice, Accordingly, Plaintiff anticipatory breached a contract with SMK.

Second, Plaintiff argues SMK never issued Plaintiff any invoice for Purchase Order Numbers 58 and 59. [D.E. 118]. To the extent Plaintiff argues SMK did not issue Plaintiff a purchase order, no contract could have been entered into between the parties given the basis for the written agreements were the purchase orders and invoices. If there was an absence of a valid contract, SMK could not have possibly committed a breach of that contract. In any event, Mendoza was fully aware since August 2011 that one of the terms of the contract was payment

3

was to be made first. [D.E. 100, ¶ 5; D.E. 100-1, pp 84-85].

Third, Plaintiff argues SMK should not be granted summary since SMK attempted to substitute other products, but could not gain access to the warehouse. [D.E. 118, p. 4]. This statement does not create an issue of fact as to whether Plaintiff's failure to pay for the goods in its entirety as agreed upon resulted in an anticipatory breach of the contract. While SMK did make an effort to sell Plaintiff alternative goods that were located in Florida at Universal, these goods were not the goods Plaintiff originally agreed to purchase, and SMK agreed to sell it. Instead, Plaintiff was fully aware these goods were located in places outside Florida. [D.E. 100-1, pp. 96-97]. Though SMK did make an effort to sell Plaintiff goods located in Florida, this did not change the fact that Plaintiff anticipatory breached a contract to purchase the goods in purchase order nos. 58 and 59 from SMK. At best, Plaintiff rescinded the contract.[1]

Additionally, the record evidence proves Plaintiff purchased the goods being stored at Universal by SMK's supplier Sutherland Global Services, which SMK was going to sell Plaintiff, directly from James Batalini, Walther Vandersypt, V & B Trading, Inc., Central Tobacco, Sutherland Global Services, Inc., and/or Michael Bartusek. This serves as the basis for SMK's unclean hands defense. This conclusion is illustrated by the following facts:

Borg traveled to Florida to meet with Mendoza in April 2012. [D.E. 100-2, ¶ 22-23]. Subsequent to Plaintiff failing to pay for the goods it agreed to purchase from FD and SMK, SMK informed Plaintiff his supplier, Sutherland, had Marlboro cigarettes available to purchase at the Universal Warehouse in Port Everglades, Florida. [D.E. 100-2, ¶ 24]. It cannot be refuted that Michael Bartusek, Sutherland's Chief Financial Officer, was working with SMK and Borg to sell the Marlboro cigarettes Sutherland was storing at Universal to one of Borg's clients.

---

[1] Plaintiff's cause of action appears, at best, to sound in rescission. Plaintiff, however, has not alleged a cause of action for rescission in this case.

4

[D.E. 124-1, pp. 56-58]. Borg then travelled to Florida to meet with Mendoza, and to visit Universal to show Plaintiff the Marlboro cigarettes. On their way to Universal, Bartusek contacted Borg and told him that the proper arrangements were not made with Batalini, and told him not to travel there. [D.E. 100-2, ¶ 25].

Borg then traveled back to Florida on May 4, 2012 to meet with Mendoza a second time. [D.E. 100-2, ¶ 26]. Mendoza and Borg planned to look at the Marlboro cigarettes Sutherland was storing at Universal. *Id*. Bartusek arranged for this inspection with James Batalini, owner of Universal, and planned to attend. [D.E. 124-1, pp. 64-65]. Bartusek, however, allegedly missed his flight to Florida. [D.E. 124-1, p. 21, lines 9-13]. Mendoza also did not arrive to Universal as scheduled. [D.E. 100-2, ¶ 27]. The offices were closed by the time Mendoza and his associate Taylor arrived. [D.E. 100-2, ¶ 28]. Batalini refused to permit Borg and Mendoza to inspect the goods. [D.E. 124-1, p. 68]. Taylor, Mendoza's associate, went to Universal where he met with Batalini. Taylor went to Universal after Borg informed Mendoza the goods were being stored at Universal either before, or shortly after the scheduled May 4 inspection. [D.E. 100-1, p. 141]. During that meeting, a conspiracy to interfere with SMK's business relationship with Plaintiff was formed.[2]

Unbeknownst to Borg and SMK, Mendoza purchased the Marlboro cigarettes he was going to purchase from SMK, which were located at Universal, directly from Batalini, Van Der Sypt, V & B Trading, LLC, Central Tobacco, Sutherland, and/or Michael Bartusek. Batalini and Van Der Sypt either brokered it for Sutherland, or sold it directly to Plaintiff. [D.E. 124-1, p. 49]. Batalini and Van Der Sypt, who are owners in several companies, met with Taylor, and spoke

---

[2] On June 25, 2014, SMK has filed an action against the co-conspirators for conspiracy to intentionally interfere with SMK's business and contractual relationship with Lorali. It is pending before this very same court and Honorable Judge. The case is styled *SMK Associates, LLC v. Lorali*, et al, 14-cv-61460-KMW.

5

with Mendoza on the telephone about purchasing cigarettes during their encounter. [D.E. 100-4, p. 141; D.E. 100-3, pp. 13, 16-17; D.E. 104, pp. 13-15]. Plaintiff then purchased the Marlboro cigarettes SMK was going to sell it directly from Batalini and Van Der Sypt, who was storing it Universal. [D.E. 100-4, pp. 17-18].

Though Van Der Sypt refused to say who he purchased the Marlboro cigarettes from [D.E. 100-4, p. 18, lines 5-6], the record evidence proves the Marlboro cigarettes sold to Plaintiff by Van Der Sypt and Batalini were the very same cigarettes Bartusek and Sutherland was going to sell SMK, who was going to resell it to Plaintiff. [D.E. 124-1, p. 49]. These facts prove Plaintiff anticipatory breached the contract with Plaintiff when it purchased the Marlboro cigarettes Sutherland was storing at Universal directly from Batalini and Van Der Sypt. Plaintiff breached the contract, and failed to purchase the goods from SMK since it already purchased the goods from the persons who were storing it for Sutherland. Given it was Plaintiff who committed the first breach, SMK should be granted summary judgment on the breach of contract claims against it by Plaintiff. *Hospital Mort Group v. First Prudential Corp.*, 411 So.2d 181, 182 (Fla. 1982).

    **C.**    **Unjust Enrichment**

    **1.**    **Lorali v. FD.**

Plaintiff erroneously claimed FD was liable under a theory of unjust enrichment. Plaintiff argues FD's summary judgment motion should be denied because Borg stated he used the proceeds from the deposits to pay for common office expenses, where FD and SMK maintain offices. [D.E. 118, p. 5]. This is patently false. Borg did not state SMK used the $88,000 deposit to pay common expenses for FD and SMK. [D.E. 122-1, pp. 183-186]. Rather, Borg responded, "I think it just went into the general corporate fund." *Id*, p. 183, lines 4-5. "Paid business expenses." *Id*, line 9. Borg did not state he paid FD's business expenses, however. Instead,

Borg obviously was referring to SMK's business expenses in responding to the question. This is evident given Plaintiff's counsel asked Borg during his deposition:

> Q. Do you recall what business expenses you spent on it?
> A. Attorneys, insurance, accountants, business expenses, insurance?
> Q. What insurance did you have?
> A. I think, product liability.
> Q. Under SMK Associates?
> A. I think so.

*Id.* lines 16-23.

Even assuming the court construes Borg's statement in the fashion Plaintiff represented it, summary judgment is still proper. Mendoza acknowledged in his deposition that Plaintiff paid SMK the $88,000 deposit rather than to FD. [D.E. 100-1, p. 150, lines 6-18]. In this circumstance, FD was not conferred a benefit from Lorali. Instead, FD was conferred a benefit from SMK because SMK would have used its funds to pay for common office expenses. At best, FD was only conferred an incidental benefit of the payment to SMK from Plaintiff. This is insufficient to establish unjust enrichment as to FD. *Nova Info. Sys., Inc. v. Greenwich Ins. Co.,* 365 F.3d 996, 1007 (11th Cir.2004) (finding that "at best, [the plaintiff] conferred an indirect or incidental benefit on [the defendant]," which could not support a claim for compensation under the doctrine of unjust enrichment).

SMK and FD are two (2) separate companies. FD cannot be held liable for the alleged debts of SMK simply because Plaintiff alleges SMK used the proceeds it received from Plaintiff to pay office expenses for FD and SMK. Additionally, while Martin Borg was the managing member of both FD and SMK, the evidence proves, if anything, it was SMK who accepted and retained the benefit rather than FD. As such, Plaintiff cannot prove it was inequitable for FD to retain a benefit without paying for it given FD did not receive a benefit from Plaintiff.

## 2. Lorali v. SMK and FD

Plaintiff argues SMK should not be granted summary judgment on the grounds that an express contract exists because it has not been proven yet. Unjust enrichment may only be pleaded in the alternative to a breach of contract claim where one of the parties asserts that the contract governing the dispute is invalid. *See Zarrella v. Pac. Life Ins. Co.,* 755 F.Supp.2d 1218, 1227–28 (S.D.Fla.2010). Such was not the case here. SMK acknowledges that a contract was entered into between Plaintiff and SMK for the sale of cigarettes. SMK acknowledges an agreement was entered into between the parties in this brief. As such, Plaintiff's claim for unjust enrichment fails as a matter of law. *Degutis v. Financial Freedom, LLC*, 978 F. Supp. 1243, 1266 (M.D. Fla. 2013).

## D. Fraud in the inducement

### 1. Lorali did not rely upon any representation by FD, or suffer consequent injury.

Plaintiff asserts in its opposition memorandum that FD committed fraud when it represented it owned goods when it did not. Even assuming this were true, the record is devoid of facts establishing Plaintiff detrimentally relied upon any representation by FD. Fraud cannot be proven absent detrimental reliance. *Associated Industries Ins. Co., Inc. v. Advanced Management Services*, 2014 S.D. Fla. 1237685, *8 (S.D. Fla. 2014); *Johnson v. Davis,* 480 So.2d 625, 627 (Fla.1985). Any representation concerning purchase order numbers 58 and 59 can only be attributed to SMK, who received the purchase order, and allegedly made the statement.

Additionally, Mendoza confirmed in his deposition that Plaintiff did not pay FD any monies towards an invoice. [D.E. 100-1, p. 150]. Because Plaintiff did not pay FD any monies towards the purchase of any goods, Plaintiff did not suffer any consequent injury as a result of

8

FD, a necessary element of fraud in the inducement. *Associated Industries Ins. Co., supra.* Accordingly, FD should be granted summary judgment as to the fraud claim.

### 2. Plaintiff did not pay a deposit as a result of the alleged misrepresentations.

The gravamen of Plaintiff's fraud claim is that Defendants falsely stated it owned goods at Universal and Miami, Florida, and that Plaintiff paid a deposit as a result of that misrepresentation. [D.E. 108, ¶¶ 54, 55, 57, 58]. SMK and FD argued in summary judgment that Plaintiff's claim could not survive summary judgment given Plaintiff did not pay any deposit in reliance upon Defendants' representation that it owned goods being stored at Universal. [D.E. 101, pp. 9-10]. Plaintiff, however, fails to specifically address this argument in its opposition papers. [D.E. 118, p. 8]. Instead, Plaintiff attempts to divert the court's attention from the central issue by arguing Defendants falsely stated that SMK owned the product listed in purchase orders 58 and 59. [D.E. 118, p. 8]. That representation, however, did not serve as the basis for Plaintiff's fraud claim. [D.E. 108, ¶¶ 54-55]. Since fraud claims must be pled with *specificity* in accordance with Fed.R.Civ.P. 9(b), Plaintiff may not now come back after the pleadings are closed and allege a separate basis for fraud.

Plaintiff's assertion that SMK did not have the product available to be purchased at Universal is disingenuous, as well as specious. Contrary to Plaintiff's deliberate false assertion that SMK did not produce any product for inspection, the testimony of Michael Bartusek confirms SMK had the cigarette products available to purchase at the Universal Warehouse. [D.E. 124-1, pp. 56-58]. Sutherland indeed arranged for an inspection of the goods for SMK at Universal. [D.E. 124-1, pp. 64-65]. Plaintiff was well aware Bartusek testified Sutherland was working with Borg to sell the goods being stored at Universal to SMK's client at the time Plaintiff filed the Amended Complaint, as well as its opposition to the summary judgment

motion.[3]

Upon learning the goods were stored at Universal, Plaintiff circumvented SMK, and purchased the product directly from the people who were storing it for Sutherland. Bartusek, Van Der Sypt, and Mendoza all confirmed Plaintiff purchased the Marlboro cigarettes SMK intended to sell Plaintiff directly from Batalini and Van Der Sypt after SMK was denied access to the warehouse. [D.E. 100-1, pp. 141-142; DE 100-4, pp. 17-18; D.E. 124-1, p. 49]. These facts establish SMK and FD did not make a false statement, and the purported false statements did not result in injury to Plaintiff. Accordingly, summary judgment should be granted to SMK and FD.

### 3. SMK's case against Sutherland is not pertinent to the issues in this action.

Plaintiff finally attempts to overcome summary judgment by offering evidence elicited in the case by SMK against Sutherland, sitting in the Northern District of Illinois. [D.E. 118, pp. 8-9]. That case is not pertinent to the issues herein. The case against Sutherland in Illinois is a separate matter, inapplicable to the matter at hand. That disputed will be resolved before a trier of fact in the Northern District of Illinois rather than this Court. Plaintiff has no knowledge or information whether SMK's claims have merit, other than the self-serving statements made by Sutherland's representatives during their depositions. This is not evidence the court can consider in deciding SMK and FD's motion for summary judgment.

### E. Conclusion

Defendants' motion for summary judgment should be granted in its entirety.

---

[3] Bartusek's deposition was taken on June 10, 2014. [D.E. 124-1]. Plaintiff filed the second amended complaint on June 13, 2014. [D.E. 108]. The opposition memorandum was filed on July 1, 2014. [D.E. 118].

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of Defendants' Reply Brief has been furnished via the CM/ECF System this 9th day of July, 2014

                **SOLNICK LAW, P.A.**
                1815 Griffin Road
                Suite 207
                Ft. Lauderdale, FL 33004
                Phone: 954-321-0176
                Fax: 954-321-0177

                /s/ *Peter J. Solnick, Esq.*
By: _____
                Peter J. Solnick, Esq/FBN 670006