UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WILLIAMS/SIMONTON

LORALI, INC.                                             CASE NO. 13-cv-22204

    Plaintiff/Counter-defendant,

v.

SMK ASSOCIATES, LLC and
FOREVER DUCKY, LLC

    Defendants/Counter-plaintiffs.
_____/

SMK ASSOCIATES, LLC,                                     CASE NO. 14-cv-61460
An Illinois Limited Liability Company

    Plaintiff,

v.

LORALI, INC., A Florida Corporation,
V & B TRADING, LLC, A Florida Limited Liability
Company, CENTRAL TOBACCO. CO, LLC,
A Florida Limited Liability Company
JAMES BATALINI, individually,
WALTHER VAN DER SYPT, individually,
SUTHERLAND GLOBAL SERVICES, INC.,
d/b/a Kiki Imports, A New York Corporation,
MICHAEL BARTUSEK, individually

    Defendants.
_____/

**PLAINTIFF, SMK ASSOCIATES, LLC'S, MOTION TO CONSOLIDATE
CASE NO. 14-CV-61460 and 13-CV-22204 AND INCORPORATED MEMORANDUM
OF LAW**

    Plaintiff, SMK Associates, LLC, through undersigned counsel, pursuant to Federal Rule of Civil Procedure 42(a), hereby moves to consolidate Case Number. 14-cv-61460 and Case No. 13-cv-22204, and as grounds thereof, states as follows:

1

A.  **BACKGROUND**

This lawsuit arises out a business relationship and agreement between Lorali, and Forever Ducky, LLC (FD) and SMK Associates, LLC (SMK).

### 1. Lorali places an order with Forever Ducky.

Martin Borg (Borg) is the managing member of FD and SMK, companies organized under the laws of the state of Illinois. (Borg Affidavit, ¶ 4).[1] FD and SMK are resellers of goods, including cigarettes. *Id* ¶ 3. Borg was introduced to a gentleman by the name of Paul Mendoza, the owner of Lorali, Inc., a buyer and seller of cigarettes. (Borg Affidavit ¶ 6). After said introduction, Lorali submitted a purchase order to FD for cigarettes. (Mendoza depo, p. 43, lines 10-15; p. 47, lines 4-7; Borg Affidavit, Exhibit A).[2] On August 9, 2011, FD invoiced Lorali for the goods. (Borg Affidavit, ¶ 10; Mendoza depo, Exhibit 3). This invoice memorialized the terms of the parties' agreement. *Id.* Prior to submitting the purchase order, Lorali agreed to these terms. (Borg Affidavit, ¶ 7-10, 14; Mendoza depo, pp. 84-85). Lorali failed to pay the monies due upon receipt, as set forth in the invoice. (Mendoza depo, p. 46, lines 3-7).

### 2. Lorali agrees to a non-circumvention agreement; Lorali also places an order with SMK.

On or about February 20, 2012, Lorali contacted SMK, Borg's company, to place another order for product. (Mendoza depo, p. 108, lines 14-24; See also, Mendoza depo, Exhibit 18). This was despite the fact that Lorali claimed FD breached a contract by failing to supply goods Lorali agreed to purchase. Lorali submitted purchase order

---

[1] Borg's Affidavit is attached as Exhibit A. This affidavit was previously submitted in support of SMK and FD'S motion for summary judgment. [D.E. 100-2].
[2] Mendoza's deposition is attached as Exhibit B. It was previously filed in support of SMK and FD's motion for summary judgment. [D.E. 100-1].

No. 58 to SMK. (*Id*; See also, Borg Affidavit ¶ 17). On February 21, 2012, Lorali submitted a second purchase order No. 59 to SMK. (Borg Affidavit ¶ 17). Borg informed Mendoza these goods were located in Uruguay and Dubai. *Id*. Mendoza knew the goods Lorali agreed to purchase were located in Uruguay and Dubai. (Mendoza depo, pp. 96-97). On February 27, 2012, Lorali entered into a non-circumvention agreement with SMK. The agreement provided,

> "the parties agree not to circumvent, disclose, or in any manner enter into any separate business transaction, with individuals, corporations, or other entities, related to information or introduction from or by the other party, or parties hereto, or any associate of such party of Parties."

(See Non-Circumvention Agreement, ¶ 4).[3]

Because Lorali did not honor its previous obligation to pay FD, Borg required Lorali to pay a deposit on any goods it ordered. (Borg Affidavit ¶ 17). Lorali paid SMK an $88,000 deposit for the goods it was ordering. (Mendoza depo, pp. 93-97, 150-151; See also, Borg Affidavit ¶ 19). Lorali nor Mendoza attended an inspection as to these goods, or made any effort to inspect the goods. (Mendoza depo, pp. 98-100). SMK invoiced Lorali for Purchase Orders Nos. 58 and 59. (Borg Affidavit ¶ 18). Lorali did not pay SMK the full amount of the invoice. (Mendoza depo, 120, lines 14-25; See also, Borg Affidavit ¶ 21). Lorali also ordered additional product from SMK, but did not pay for it.

### 3. SMK agrees to sell Lorali goods located at Universal Warehouse.

One of SMK's suppliers, Sutherland Global, informed Borg that it had goods available for purchase at the Universal Warehouse (Universal) located in Port

---

[3] The Non-Circumvention Agreement is attached as Exhibit C.

3

Everglades, Florida. (Borg Affidavit, ¶¶ 22, 23; Bartusek depo. pp. 56-58).[4] At that time, because Lorali had not paid the money for the goods it agreed to purchase from SMK, and did not arrange for pick-up or delivery, Borg informed Lorali his supplier had goods available for sale in Ft. Lauderdale at Universal. (Borg Affidavit ¶ 24).

On or about April 9, 2012, Borg traveled to Fort Lauderdale, Florida to meet with Mendoza. (Borg Affidavit, ¶¶ 22, 23; See also, Mendoza depo, pp. 137, 159-160). Borg met with Mendoza at his office. *Id.* Borg made arrangements for Mendoza and Borg to travel to Universal to look at the goods Sutherland was storing at Universal. (Borg Affidavit ¶¶ 22, 23). Borg told Mendoza that Sutherland informed him the cigarettes were located at Universal. (Borg Affidavit ¶ 24; Mendoza depo., p. 138, lines 13-18). On the way to Universal, Michael Bartusek, Sutherland's Chief Financial Officer, contacted Borg on the telephone, and told him to not travel to Universal because the proper arrangements were not made with Batalini. (Borg Affidavit ¶ 25).

On or about May 4, 2012, Borg traveled back to Florida with Steven Weisenfeld to meet with Mendoza a second time. (Borg Affidavit ¶ 26). This time, Sutherland made arrangements for SMK and Lorali to inspect the goods it had available for purchase at Universal with Batalini. (Borg Affidavit, Exhibit G; Bartusek depo, pp. 63-65). Bartusek was also scheduled to attend the inspection. (Bartusek depo. p. 65, line 5). Shortly before the inspection was to occur, Bartusek notified Borg that he could not attend, and, without prior notice, neither Mendoza nor Taylor arrived at the Warehouse to meet with Borg, who had arrived at 1:00 p.m., as scheduled. (Borg Affidavit ¶ 27; Bartusek depo. p. 21, lines 9-13). Mendoza contacted Borg, who explained that he and Taylor were

---

[4] Bartusek's deposition is attached as Exhibit D. It was previously filed with this court. [D.E. 124-1].

4

stuck in traffic and running late. (Borg Affidavit ¶ 28). By the time Mendoza and Taylor arrived at Universal at approximately 3:00 p.m. on May 4, 2012, Universal warehouse was closed. *Id*. Lorali did not purchase the cigarettes at Universal from SMK.

### 4. Lorali sues SMK and FD

On April 30, 2013, Lorali sued SMK and FD for breach of contract, unjust enrichment, fraud, and account stated. [D.E. 1, Case No. 13-cv-22201]. Lorali sued SMK and FD for a return of its $88,000 deposit. (Mendoza depo, pp. 150-151). On March 11, 2014, this Court kindly granted SMK and FD leave to file a counterclaim against Lorali for breach of contract. [D.E. 60]. Lorali has dismissed the breach of contract claims against FD. [D.E. 108]. Lorali has also dismissed the account stated claims against FD and SMK. [D.E. 127]. SMK's affirmative defenses include the doctrine of unclean hands and set-off. [D.E. 109]

### 5. SMK discovers Lorali breached the non-circumvention agreement during discovery.

Lorali identified gentleman by the name of James Batalini and Walther Van Der Sypt as witnesses in the action.[5] Lorali stated in its answers to interrogatories these persons would testify that SMK and FD did not own, or have the rights to sell the cigarettes located at Universal, being stored by Sutherland Global and Bartusek. (Lorali's Answers to Interrogatories, ¶ 1). During Batalini and Van Der Sypt's depositions, however, SMK discovered that Robert Taylor, Lorali's agent, clandestinely traveled to Universal shortly after Borg and Mendoza were not granted access to Universal to inspect the cigarettes Sutherland was storing.[6] (Batalini depo, pp. 16-17;

---

[5] A copy of Lorali's answers to interrogatories attached as Exhibit E, ¶ 1.
[6] The relevant portions of Batalini's deposition is attached as Exhibit F; Van Der Sypt's

5

Van Der Sypt depo, pp. 13-14). Taylor met with Batalini and Van Der Sypt at Universal. *Id.* Taylor then placed a telephone call to Mendoza, who spoke with Batalini and Van Der Sypt about purchasing cigarettes. (Batalini depo, pp. 19-21; Van Der Sypt depo, p. 13, lines 17-24). Lorali subsequently purchased the cigarettes SMK was going to sell Lorali directly from Batalini and Van Der Sypt, who brokered it for Bartusek and Sutherland, and additional cigarettes. (Bartusek depo., pp. 17-18, 49; Van Der Sypt, pp. 17-18). This violated the parties' non-circumvention agreement.

Bartusek and Sutherland were fully aware SMK intended to sell the cigarettes owned by Sutherland to Lorali. Despite knowing Lorali and SMK were discussing a potential purchase, Bartusek and Sutherland allowed Batalini and Van Der Sypt to sell the goods directly to Lorali instead of SMK. (Bartusek depo. pp. 34-35). This evidences a conspiracy to interfere with SMK's business relationship and contract with Lorali.

**6.   SMK sues Batalini, Van Der Sypt, Bartusek, and their companies.**

By purchasing cigarettes from Van Der Sypt and Batalini after Lorali met them through SMK, Lorali breached the non-circumvention agreement with SMK. The record evidence further proves Sutherland and Bartusek conspired with Batalini and Van Der Sypt to interfere with SMK's business relationship with Lorali. The evidence further demonstrates the only reason Lorali decided to not purchase the cigarettes located at Universal from SMK is because of defendants' interference.

Since that time, Lorali has made several purchases from Van Der Sypt and Batalini, and perhaps Sutherland. (Batalini depo, pp. 23-24, Van Der Sypt depo, pp. 23-25). As a result, SMK has lost thousands of dollars.

---

deposition is attached as Exhibit G.

On June 25, 2014, SMK filed a lawsuit against Lorali, Central Tobacco, LLC, V & B Trading, LLC, Sutherland Global, James Batalini, individually, Walther Van Der Sypt, individually, and James Batalini, individually.  Case No. 14-cv-61460.  The following causes of action have been raised:

1. Breach of Non-Circumvention Agreement against Lorali, LLC;

2. Intentional Interference with Business Relationship against Central Tobacco, V & B Trading, James Batalini, and Walther Van Der Sypt;

3. Conspiracy against all defendants except Lorali.

SMK seeks to consolidate Case No. 14-cv-61460 with 13-cv-22201, which are both before the Honorable Kathleen Williams.

**B.   Rule 42(a) Consolidation**

Under Federal Rule of Civil Procedure Rule 42(a), the court can consolidate cases "involving a common question of law or fact." Fed.R.Civ.P. 42(a). In making this determination, the court retains complete discretion and may consolidate all or part of any action. *Young v. City of Augusta, Ga.,* 59 F.3d 1160, 1168 (11th Cir.1995). (citing 9 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2383, at 439–40 (1994) (discussing that even when consolidation under Rule 42(a) may be warranted because of a common issue of law or fact, it is not required)). For Rule 42(a) to apply, the cases must be "simultaneously pending in the same court." *Hargett v. Valley Fed. Sav. Bank,* 60 F.3d 754, 765–66 (11th Cir.1995).

**C.   Argument**

**1.   Same Court.**

The cases SMK are requesting to consolidate are pending in the same court. Both cases are before the Honorable Kathleen Williams.  See, Case No. 14-cv-61460

7

and 13-cv-22204.

## 2. Common Issues of Law or Fact.

The actions SMK seeks to consolidate have common issues of law and fact. Though the actions do not arise out of the very same operative facts, the cases involve a series of related and common facts and law, which will undoubtedly be tried in both actions. Indeed, the second lawsuit is an extension of the first filed case. Given the cases involve common questions of fact and law, litigating it in separate lawsuits poses the risks of inconsistent results, and findings. It further does not promote judicial economy, and is a waste of judicial resources.

For example, in the lawsuit Lorali filed (case no. 13-cv-22204), Lorali has claimed SMK breached a contract by failing to supply the ordered goods, and fraud in the inducement. The gravaman of Lorali's claim is that SMK failed to produce any cigarettes for sale, and misrepresented it had the right to sell goods being stored at Universal. [D.E. 108, ¶¶ 54-56]. Lorali intends to call James Batalini and Walther Van Der Sypt to testify in support thereof. Lorali has indicated it plans to elicit testimony from Batalini and Van Der Sypt in order to prove SMK did not maintain the right or ability to sell the goods located at Universal. (See, Lorali's Answers to Interrogatories, ¶ 1). Though untrue, that allegation serves as the sole basis for Lorali's fraud claim against SMK and FD. [D.E. 108, ¶¶ 54-56].

In order to counter Batalini and Van Der Sypt's anticipated testimony, SMK intends to examine Bartusek, the Chief Financial Officer of Sutherland Global, who was storing the cigarettes at Universal. Bartusek testified during his deposition that Sutherland was working with Borg to sell the cigarettes to one of his clients in Florida.

(Bartusek depo, pp 56-58). Bartusek further acknowledged Sutherland owned the goods located at Universal, and SMK intended to broker it to his client. (Bartusek depo. p. 32-33, 52). After Borg brought Mendoza and Taylor to the Universal Warehouse, where the goods were being stored, Lorali breached the non-circumvention agreement by purchasing the goods, and additional goods directly from Batalini and Van Der Sypt, thereby bypassing SMK. (Mendoza depo, p. 141; Bartusek depo., pp. 34-35; Van Der Sypt depo, pp. 17-18). This was Lorali's motive for not purchasing the goods from SMK. This conduct resulted in a breach of the non-circumvention agreement, and interfered with SMK's business relationship and contract with Lorali. SMK will use this testimony to prove that it was Lorali who anticipatory breached the contract, and breached a non-circumvention agreement, resulting in substantial damages to SMK rather than to Lorali.

    This very same testimony will also be presented in the second lawsuit. For instance, SMK has alleged Lorali breached the non-circumvention agreement by purchasing the cigarettes from Batalini and Van Der Sypt, who allegedly brokered it for Sutherland. Batalini in fact approached Bartusek about brokering the cigarettes after Batalini's conversation with Taylor and Mendoza. (Bartusek depo, pp. 34-35). It is necessary for SMK to present the testimony of Mendoza, Batalini, and Van Der Sypt, who have all confirmed that Mendoza purchased cigarettes directly from Batalini and Van Der Sypt after Borg brought Mendoza to Universal to inspect cigarettes being stored by Sutherland.

    Likewise, SMK will introduce Bartusek as a witness in both actions. Bartusek has also confirmed in his deposition that the cigarettes Sutherland was storing at Universal were brokered by Batalini. (Bartusek depo. pp. 34-35). Interestingly enough,

Bartusek was storing Marlboro cigarettes. *Id.* p. 34, lines 19-21. Mendoza and Van Der Sypt confirmed in their depositions that Lorali purchased Marlboro cigarettes from Van Der Sypt. (Van Der Sypt depo. pp.17-18, 28). Bartusek confirmed Batalini brokered the Marlboro cigarettes for Sutherland. (Bartusek depo. pp. 34-35). Lorali purchased the cigarettes from Van Der Sypt and Batalini shortly after Taylor traveled to Universal, and Mendoza spoke with Batalini and Van Der Sypt on the telephone. (Van Der Sypt depo*,* pp. 17-19). Mendoza and Batalini both testified that Taylor traveled to Universal only to inquire about the goods Borg offered to sell Lorali. (Mendoza depo., p. 141; Batalini depo, pp. 16-17). Lorali subsequently purchased additional product from Batalini and Van Der Sypt, and/or the companies they control. (Mendoza depo. p. 141; Van Der Sypt depo, p. 23). Lorali then failed to purchase the Marlboro cigarettes from SMK.

All of the above referenced facts will be presented in both cases. It is essential testimony that will prove SMK and FD's defenses and counterclaims, as well as prove SMK's claims in case no. 14-cv-61460. Particularly, in sum, the following facts are common in each of the cases:

1. Lorali submitted purchase orders to SMK;
2. Lorali paid a deposit for the cigarettes;
3. Lorali did not pay the full invoice for the goods;
4. Lorali and SMK entered into a non-circumvention agreement;
5. Sutherland stored Marlboro cigarettes as Universal;
6. Sutherland Global offered SMK to sell the Marlboro cigarettes located at Universal to one of SMK's clients;
7. Borg informed Lorali that Sutherland's Marlboro cigarettes were located at

Universal to purchase;

8. Borg traveled to Florida to meet with Mendoza in April 2012;

9. Bartusek arranged for Borg and Mendoza to inspect the goods;

10. Borg and Mendoza were on their way to Universal to inspect the goods;

11. Bartusek informed Borg the proper arrangements were not made;

12. Bartusek arranged for the inspection again for May 2012;

13. Borg traveled back to Florida in May 2012.  Bartusek and Mendoza were supposed to be present at the inspection;

14. Bartusek did not attend the inspection.  Mendoza arrived late;

15. Batalini would not allow Borg and Mendoza to inspect the goods;

16. At some point after Borg's first or second trip to Florida, Lorali's associate Robert Taylor traveled to the Universal Warehouse to meet with Batalini;

17. Taylor placed a telephone call to Mendoza while he was at Universal.  Mendoza then spoke with Batalini and Van Der Sypt about purchasing cigarettes;

18. Batalini subsequently contacted Bartusek about selling the cigarettes he was storing at Universal;

19. Batalini suggested that he broker or sell the Marlboro cigarettes rather than SMK;

20. Lorali did not pay SMK for the cigarettes SMK agreed to sell Lorali at Universal or abroad;

21. Lorali purchased the Marlboro cigarettes SMK was going to sell it from Batalini and Van Der Sypt, or one of the companies they control after Borg

>informed Mendoza about the existence of the goods at Universal, and Batalini and Van Der Sypt spoke with Mendoza on the telephone;

22. Lorali has continued to purchase cigarettes from Batalini and/or Van Der Sypt, or one of the companies they control;

The above referenced facts, which will presented in both actions, will establish: 1) Lorali anticipatory breached a contract with SMK; 2) Lorali breached a contract with SMK; 3) Lorali breached the non-circumvention agreement with SMK; 4) Batalini, Van Der Sypt, and the companies they own and control interfered with SMK's business and contractual relationship with Lorali; 5) Defendants conspired to interfere with SMK's business and contractual relationship with Lorali.

In addition to the lawsuits having common facts, the following common issues of law exist in both cases:

1. Lorali anticipatory breached a contract with SMK;
2. It was Lorali who breached a contract with SMK;
3. Lorali breached the non-circumvention agreement with SMK;
4. Lorali's claims are barred by the doctrine of unclean hands as a result of its wrongful actions;
5. Lorali's claims are set off by the damage it caused SMK.

Because the goods located at Universal are the subject of the first and second lawsuits, there is common issues of law and fact in case numbers 13-cv-22204 and 14-cv-61460.  A jury and this court could arrive at conflicting findings of fact and conclusions of law if the claims are heard separately.  The consolidation of these cases will further promote judicial economy and conserve resources.  Accordingly, SMK

submits it would be appropriate for this Honorable Court to consolidate the two actions to avoid conflicting results, and to promote judicial economy.[7]

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1, counsel for SMK Associates, LLC and Forever Ducky, LLC conferred in good faith with counsel for Plaintiff, Rhonda Anderson, Esquire regarding the requested relief.  Lorali does not agree to the proposed relief requested in this motion.[8]

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of SMK, LLC and Forever Ducky LLC's motion to consolidate has been furnished via the CM/ECF System this 16th day of July, 2014.

**SOLNICK LAW, P.A.**
1815 Griffin Road
Suite 207
Ft. Lauderdale, FL 33004
Phone: 954-321-0176
Fax: 954-321-0177

/s/ *Peter J. Solnick, Esq.*
By: _____
Peter J. Solnick, Esq/FBN 670006

.

---

[7] In the event the Court agrees to consolidate the two actions, SMK asks the court to extend the date of the trial, and reopen discovery for a limited period of time.  SMK needs to gather additional information to prove its claims and the damages it ultimately suffered.  The filing of this motion was not for the purposes of delaying the matter.  To the contrary, SMK is attempting to promote judicial economy, and conserve judicial resources.

[8] Because none of the defendants have filed any paper in case no. 14-61460 to date, SMK has not filed this motion in that case.  Instead, as of this date, SMK and FD are only filing this motion in case no. 13-22204.